Thank you. Thank you. Good morning. May it please the court. My name is Corrie Hong, and I represent petitioner Myrna Lopez-Castano. I will reserve two minutes and I'll watch my own time. I will discuss particularity, social distinction, and then CAT. On particularity, the group, quote, mothers of teenage daughters, unquote, has clear boundaries, uses commonly accepted definitions, and communicates who's in and who's outside. The government gives no defense to the BIA's finding to the contrary. On social distinction, the BIA erred in claiming there's no evidence that others recognize Ms. Lopez as belonging to this group. The government concedes that that was a mistake. Jay Famiglietti May I ask you, I'm sorry, but before you get further into social distinction, can I just ask you about the immutability requirement? I know the government hasn't contested that, but it seems that it's obviously immutable in the sense that you can't stop being somebody's mother. But at the same time, it's highly mutable in the sense that the teenage daughter will only be a teenager for seven years. And in this case, I think she was 15 back in 2014, which means she's 22 now. So even if we were to remand, wouldn't the board just say there can't possibly be a threat of future persecution on account of her membership in the group as you've defined it? Because she's not in that group anymore. Dr. Anneke Vandenbroek Your Honor, I'd have two answers. First, under Ventura, the proper course is to send it back to the BIA to discuss that because that wasn't contested below. But to your point, I believe that we would prevail on that simply because after she left the country, the cartel went after the mother-in-law, they went after the husband. Because at that point, as the mother of the teenage daughter, there was then the nexus and the persecution because she ruined the plan. She took her daughter away from the cartel at the time that she was the teenager before being 16. So I'd argue that her status as the mother of the teenage daughter still is present, and she will be targeted because she protected her daughter at a critical time. Isn't that an awfully broad class? I mean, I could see mothers of teenage daughters who were vulnerable to the kind of persecution that's described in the record. And it might even be different if the daughter was the person seeking the relief here. But mothers of teenage daughters, it seems to me, could apply to any mother of a teenage daughter. Well, Your Honor, the focus is first, particularity, common words, which that is decided regardless of the breadth. And then the question for social distinction, the question of does society actually recognize them. To the breadth- Your society is a narrow group in a particular village or state, I don't know what you would call it. Does that refer to Mexican society, the whole country, or just sort of a narrow area where this horrible conduct is going on? Have you defined it, even for your purposes, too broadly? MEVG says that society, they use the word society, can consider persons to comprise a group without being able to even identify the group's members on site. In the MEVG, the BIA talks about that sometimes the distinction is overt, sometimes it's subtle, just recognized for people in the immediate area. On this record, we have the evidence and the government concedes as such, which is what the BIA said didn't exist, that the pastor recognized her as being a part of this group. Family friends recognized her as being a part of this group. Correct me, I try to keep all the facts in every case in mind, but the pastor said your daughter is in danger. Correct. Because she is the teenager and that has been identified. She's a teenager. I mean, it would have mattered who her mother was. Yes. They were interested in her because she was a teenager and could be used in the way they wanted to use her. Well, Your Honor, under MEVG, the question of social distinction is that she has to belong to this group. And actually, the hypothetical in MEVG is former Attorneys General of Colombia, where there, the BIA said, look, standing alone, this wouldn't necessarily, they wouldn't even recognize that they would be in a group. However, they said the persecution can be a catalyst that gives people, quote, an experience of a sense of group. And that's exactly what we have had here, where there's no doubt that the members of the community, the pastor, the family friends, the whole town in the credible testimony, recognized that Ms. Lopez was in this group. She now has a sense of group because the cartel has identified her daughter as being on his radar and being targeted. That is sufficient for the MEVG. And again, I'd like to point out that the BIA did not have concerns about the breadth or the social, they said there's no evidence that she was viewed. And here, the government itself conceded there were three examples of other people in the community to recognize her as such. And the difference- The teenage girls are victims of the cartel. And I understand there's evidence that, you know, family members of them who are trying to protect them might be understood as potential victims. But what is the evidence that mothers as such are viewed as distinct? That she was a, she was called, her daughter wasn't called, she was called because they knew that she was in that group. And then the family friends called them, warning them that they were in that group, that they were identified as such. And then to the other question, this is the difference between the government and our position, is that the government says that the society has to treat her differently on that basis. But MEVG made it very clear that social distinction is separate from nexus. The question of who treats her differently is a question of nexus, and that goes to the persecutors. So that the lack of different treatment goes, does not disprove social distinction. If the court agrees with these arguments, remand on the asylum claim is warranted. On Kat, the BIA erred in minimizing that the atrocious, specific, incredible threat against a family was simply her dog being killed. If someone holds a knife against a victim's neck, there is no physical harm. But if the knife holder details of vivid threats of slashing the neck at a future time, that action rises to the level of torture. Because it is a deliberate infliction of mental anguish, and it communicates a specific message accompanied by evidence of the cartel's ability to carry through its intent. And Xochitl Jaime recognized that death threats can constitute past persecution. You know, let me, if I can interrupt for just a minute, and don't worry if we take you a little past your rebuttal time, we'll make sure you get a chance to respond. I mean, obviously, the story told here is absolutely horrifying. The IJ didn't believe it. The BIA assumed credibility, which it often does when the IJ's adverse credibility finding is questionable or weak. I will believe the story for purposes of my question, and the story is absolutely horrifying. The question is, what do we do about it? I share Judge Corman's concern that this class, proposed class, is just huge. It's, I mean, it's every mother in Mexico with a teenage daughter. I would think that there is a class or a particular social group that would have some real visibility, mothers of teenage girls who are targeted by the cartel. Is there any room for a narrower definition of the proposed social group at this point in the case? Your Honor, not before this court, but on remand, absolutely. And along those lines, at the time that this was being articulated, the Attorney General had vacated the LEA, which said that all family members are part of the group. So the board is comfortable with the breadth that the court is expressing or having concerns with. LEA 3 was just announced recently by Attorney General Garland, which then very much puts this back in play. And I should point out about the court's concerns about breadth. It isn't a floodgate. It's just the initial threshold because the person still has to prove nexus. They still have to prove past persecution. They still have to prove future persecution, and they still have to prove that the country conditions haven't changed. So the other metrics that are required to receive asylum very much narrow who is actually going to get relief, which is why, again, just the breadth of LEA families members is much even broader than mothers of teenage daughters. And that is recognized by the Attorney General and the BIA and used in other contexts. Okay, let's hear from the government, and we'll make sure you get a chance to respond. Thank you, Your Honor. May it please the court. My name is Nilam Isinula, and I represent the respondent in this matter. The court should affirm the denial of petitioner's applications for asylum with holding of removal and cap protection in this case because the agency's social distinction and likelihood of future torture findings are both supported by substantial evidence. In matter of MEVG, the board explained that social distinction means that those people with this shared group characteristic are set apart from other persons within this society in some significant way, and that the society meaningfully distinguishes such persons from persons who don't possess the characteristic or treats them differently. The board tells us that members of... Can I interrupt you at this point? What if the group was defined as mothers of teenage daughters who were subject to the kind of violence that is described in the record? Would that have sufficed? No, Your Honor. A group defined that way would have the problem of being defined by persecution. And as this court has recognized... But this isn't that separate. I'm just talking about if it would have solved one problem at threshold if the group had been defined as mothers of teenage daughters who were subject to the kind of persecution that is described in the record. So you mean putting aside the issue of circularity of being defined by the harm, which is a hang-up for us. So is the group mothers of teenage daughters who have been Is it cognizable? I mean, it suffers from the exact same problems that have all plagued the existing PSG, the existing definition of the particular social group. The evidence she relies on, there is no independent objective evidence, obviously, no background reports about the treatment or the perception of individuals in this to this small segment of her community, the pastor, her family members, and the cartel. And she relies on them identifying her as an individual, as a mother of a teenage daughter. And repeatedly, there's this idea that the government has conceded something about social distinction here. We have not. The only thing we're conceding is that she is a mother of a teenage daughter. She is somebody who meets the definition of the you're putting forward, the mother of a teenage daughter who is targeted for harm by the Salas cartel. But it's still the problem that she has not provided any evidence of how this group would be viewed by the society at large or at issue. If I can interrupt, that doesn't seem to me quite right if we compare it to other particular social groups. For example, we've recognized as a particularized social group, those who have been shown themselves willing to testify against gang members. Well, they are no more obvious to members of the general public than are the mothers of girls who have been targeted in this town. It's no secret what's happening. The cartel is targeting her daughter and targeting other daughters. And I think it's just as obvious that she's in this of willing to testify against a gang member. Well, respectfully, I disagree. But because the court has addressed that particular social group and when it came to individuals who are willing to testify or testify, there are laws in certain countries that are designed to protect witnesses who testify against the gangs. And that was objective evidence about how that group was viewed by the society. And it provided concrete, objective evidence of social distinction. That's the kind of evidence that's missing in this case, where here she's just relying on the statements of these intimates, her own family members, her pastor, and the cartel. And ultimately, she is reviving an idea that has been rejected by both the board and the court, which is the idea that persecutors' perception can define the particular social group. At page 12 of the reply petitioner cites Cordoba, a 2013 decision, and quotes that decision for the idea that persecutor perception is, quote, even potentially dispositive of the question of social visibility. And that idea has been flatly rejected by both the board in matter of MEVG and OGR, as well as this court which has deferred to the board precedents interpreting the social distinction requirements. The class, the proposed social group as described, seems to me extremely obvious. Mothers of teenage daughters. I mean, that's not, the public will know that quite generally. I'm asking, of course, a different question, which is to say, a narrower proposed social group. Would the government support a remand to the board to address the narrower group of which describes the problem in this case, of course? It does. The facts of this case are terrible. I admit that. But the fact of the matter is, it would suffer again from being circularly defined by the person. Oh, no, I understand. I understand your argument. My question is different. Would the government support a remand to allow the agency to address that narrower class? Well, remand would be futile because we know what they would do with that particular social group. You may know, but I'm not sure I do. Under Diaz-Reynoso, this court has recognized that a particular social group cannot, it has to independently exist apart from the persecution. If we define that, if we remand for that PSG of mothers of teenage girls who have become victims of sex trafficking, victims of sex trafficking is pretty clearly the persecution that's at issue here. It seems pretty foreordained what the agency would do with that. I think they would not get for circularity. I think they also would see the same social distinction issues in that she simply has not provided evidence about how a group like that would be viewed in her society or her community. Well, no, I totally disagree with you in terms of whether she's provided evidence of that. I'm not sure I can agree with you or disagree as to what the board would do. That would be just prediction or speculation by both of us. But no, she's provided quite a bit of evidence that the society in which she lives, this small town, Magdalena de Kino, they know exactly what's going on. They do recognize the girls who are being targeted. And of course, they recognize the mothers who are being targeted. There's plenty of evidence of that. But that sounds again like a of the persecutors perception concept, the idea that the social distinction requirement can be met by the viewpoint of the persecutor. But that we know can't be the case under the existing law. No, you're not taking my point. Does someone in this town recognize that this is going on? It appears that this is common knowledge in the town. They deliver young girls to the quote to to give to the boss, to use the language that we see in the evidence here. Everybody knows that this is happening. And then once the girls are targeted, they know who the girls are. And of course, they know who the mothers are. Well, so I see what you're saying. But so I think the social distinction, the idea of somebody being easily identifiable applies to those girls, but doesn't apply to the mothers. She has not shown that. Wait a minute. You're saying they know who the girls are, but they don't know who the girls mothers are. Of course, they know who the mothers girls are. This is a small town. They sure do. But it doesn't tell us how those women, the mothers are viewed by the society. Are they treated as a faction? Have they united in some sort of support group based on this? You know, wait, wait a minute. You're you're asking for lots of things that are within the definition of proposed goals. Those who would testify against gang members are not united. They are individuals with individual cases. So the idea that the mothers have to unite in order to be a proposed social group, a recognized social group, just didn't. That's not part of the requirement. That was that was just an example of evidence that would meet the social distinction requirement. But keep in mind this path. This, you know, it's an atrocity that's been going on since 2011. She's in 2014. Perhaps this problem didn't reach the sort of heights that the gang problem in El Salvador reached for witnesses who received protection under the law. And so they're the society, not just the persecutor, recognize the group as a distinct faction in society. And we have objective evidence of that. Well, let me come back. Let me come back to my question. You and I, I guess, are engaged in the business of predicting what the BIA would do were remanded to look at the narrower group. Would the government agree to a remand to look at the narrower group? No, Your Honor. I don't think we would. No. What was the narrower group raised before either the IJ or the board? I don't believe so. I'm sorry. I don't honestly remember. I just know that in the opening or the reply brief, the petitioner has been very clear that that is not her group because she does not want to define the group by persecution. She makes, you know, she in the reply brief, I think it's stated this is not a group. The group is mother of teenage daughters. It is not mothers of teenage daughters who have been targeted by the Salas cartel. She makes the clear distinction in the reply. So that is the group we have before us and that we have to deal with. I see my time is coming to an end. I just want to say with I don't have much time, but thank you very much, Your Honors. Okay. Any further questions from the bench? Okay. Thank you. Ms. Hong, let's put two minutes on the clock. You're muted. Push your button. You're muted. Thank you, Your Honor. Yes, I would. We would absolutely agree to remand. And I think the hook is HLSA that came out in January 2001 after the BIA decision made it very clear that there can be showing of social distinction based on objective evidence. And the question is, would a birth certificate meet that requirement? So I would support for remand for that narrow. I understand you would support the remand, but absent the government's agreement, I've got problems, which is why I was asking the government, would it agree? Because this case has been litigated up until now on the broader social group. And Your Honor, my best response is that HLSA in January 2021 is intervening case law by the BIA where it would be appropriate to send this back to the BIA in light of the BIA's insights in that group, which is whether people who cooperate with the police meet that threshold or not. On the second point, the MEVG, I think the key point that answers the government's response as well as Judge Miller's earlier question is found at 243, where quote, the act of persecution by the government may be the catalyst that causes the society to distinguish the former employees in a meaningful way and consider them a distinct group, but the immutable characteristic of their shared past experience exists independent of the persecution. So Judge Miller, that goes to your earlier point that their shared past experience is the immutable characteristic going forward. So it wouldn't be futile. And the question is that the MEVG recognizes that persecution, of course, as a common sense, has a role to play in the definition of the group. The third point that if the court agrees on either CAT or asylum and remands the case, I would just like to reiterate my request in the Rule 28J letter to order the return of Ms. Lopez at this time as the 10th Circuit showed that it had the authority to do. I'm sorry, I missed that last. Say again. So I filed a Rule 28J letter in which a request was made to the Court of Appeal, asking if the person prevails on the petition for review, for the court to include an order facilitating the person's return from outside of the country. The Rule 28J letter had the 10th Circuit, the request was made to the 10th Circuit, the government never objected to it, and the 10th Circuit ordered the return and the facilitation of the return as part of granting the petition for review. So we'd just like to renew that request expressly. Okay. She's returned to Mexico, is that it? She was removed. Removed, I'm sorry. Yes. She wanted to remain, she was in detention, and then the order was executed. Okay. I'm not familiar with the case you cited to us on the question of changed law that would The panel will confer. If we want more on this, we will ask for it. But for the moment, could you give me or give us a citation to that case? Yes. It is a matter of HLSA, it's at page 8 of the reply. No, no, go slowly. Okay, say that one. Okay. So it's a matter of HLSA. Yeah. Cited to it on page 8 of the reply, and the citation is 28 INDEC 233, and it's from the BIA of January 2010. And also, it was cited at page 19 of the opening brief. Okay. Is that a binding opinion of the BIA? It's a published decision, and it clarified the question of whether, for the first time, that people who cooperate with the authorities can be part of a cognizable group. And so it announced that new change and said that there, under that particular group, there was a way to prove through documentation that they actually participated in a meaningful way in the And that group actually, there, the man himself only identified people through a fingerprint. So he did not qualify, but they cited to the Ninth Circuit case law to say that this is the right test going forward. And so the BIA and the IJ did not have the benefit of that analysis when looking at mothers of teenagers. And I concur, even the better formulation would be mothers of teenagers who've been targeted. And this case will, in your view, allow us to remand for testing out a narrower definition of the proposed social group because of a change in law? That's what it'll do? Your Honor, also the recent change of LEA 3, which also recognized family members as being restored to having the breast. So on the one hand, you have LEA that has more breath, which didn't exist before. And then you have HLSA, which has a more narrow. So both of those, I think, are important for the agency to address. Can you tell me, I'm not familiar with what you described as LEA 3. Sure, Your Honor, I apologize for a shorthand. So LEA 3, it came from the board. LEA 1 was recognizing that family members of certain individuals could be cognizable groups. During the Trump administration, one of the attorney generals then issued LEA 2 that said, we vacate this decision, and we no longer recognize that distinction. Attorney General Garland just recently, this summer, issued LEA 3, where he vacated LEA 2 and said, we're going back to the old rules that the BIA had decided, and families can constitute a particular social group. Yeah, no, I've read that sequence, but it would make my life easier if you would give me the LEA 3. Your Honor, I do not have that right in front of me. May I file a decision within an hour? No, don't bother. I've got four law clerks. Okay. Any further questions from the bench? Okay, thank you. Thank you, both sides, for your helpful arguments. Lopez-Castano v. Garland, submitted for decision.
judges: FLETCHER, MILLER, Korman